Thank you, Your Honors. My name is David Ness. I'm with the Federal Defenders of Montana, and I represent the petitioner, the appellant in this case, Joel Miles White. I was appointed to represent Mr. White on a certified issue, as the Court is aware, and that issue is essentially whether the District Court erred in dismissing his 2254 petition without requiring an answer or without reviewing the State Court record. I think just a real quick view of the procedural history here, I think it is important to put the issue in context. Mr. White was convicted after a jury trial. He filed a direct appeal with the Montana Supreme Court. The Montana Supreme Court issued its decision in April of 2008. At that point, of course, he had no right to counsel. Mr. White filed his 2254 petition in Federal District Court a couple of months later. Now, in looking through the petition, I certainly have to acknowledge I think he raised about five different claims, and certainly several of those I don't think are really cognizable. They were all, as admitted, everything was unexhausted, right? Everything was unexhausted, and I think that it's very fair to say that at least a couple of those claims were probably not cognizable in Federal habeas. There was a claim, for instance, that one of the witnesses may have lied, but it was pointed out on cross-examination and that sort of thing. I don't know that that's something that necessarily – well, I would say at least a couple of those claims were, I think, subject to summary dismissal. Well, let me ask you this, Mr. Nasson. Do you think that he has, even as of this day, a procedural right to seek state habeas relief on these claims? I think he probably – there's a very good chance that he might be procedurally barred. I think that some of these claims – for instance, I spent some time in the brief, maybe a little too much time, but I was trying to set out the constitutional argument about the self-defense claim that could have been raised. Had he been sent back to exhaust that claim, he probably would have had to raise that in the context of an ineffective assistance counsel claim with appellate counsel, but that – and I think that there were several other claims that he could have gone back and exhausted and then come back into Federal court. Like what? Excuse me? Like what? Like, for instance, the self-defense claim. Whether or not there was constitutional error in preventing him from bringing in information about the victim's past history of violence and things of that nature. Well, couldn't – no, wait a minute. Didn't he – he testified in his own defense. Pardon me? He testified in his own defense. He chose to take the stand, right? He did take the stand. And didn't he have the opportunity at that time to testify about those issues? It's just that he couldn't bring them in through third parties, right? He couldn't bring them in through the parties, and I think that's where you start getting – But he could bring it in himself. He brought – he was – He did testify. In a limited fashion, he was able to testify to those. But I think we then get into the, you know, this Court's decision. I'm sure he didn't believe him. You know, about whether or not you can bring in other information to – So you had his – so my recollection of the record is that – and I know you've studied the record very carefully – that there was testimony from a number of eyewitnesses about the other individual who was in this fight with his hands up, walking backward, and your client pursuing him with a knife, continuing to stab him until he landed the ultimately fatal blow to the neck, all the while using epithets and saying he was going to kill him. Isn't that in the record? It is in the record. I guess my one problem with this – You juxtapose that. You juxtapose that against his own testimony, where he talked about his concern about the dangerousness of the victim, and then the other incidents occurred a couple of years before. Right. And if – two responses, I guess. First of all, the magistrate, and by extension the district court judge here, I think it is clear they didn't review the entire record. I think all that they reviewed, it appears to me, is the Montana Supreme Court decision. And without actually reviewing the entire state court record, I think it's kind of hard for them to come to a conclusion that this should be given a presumption of correctness. But you've reviewed the record. I did review the record. What did they rely on that was incorrect? In the entire trial transcript? What did they rely on in making their decision that was incorrect? Well, I mean – Let me put it this way. Did the magistrate judge make a factual error? Yeah, that's right. In our decision? I don't know that the magistrate made a factual error. I wouldn't go that far. But I don't think that the magistrate reviewed enough of the record. So why isn't that harmless if there's no factual error? No, I would say no, because by reviewing only the Montana Supreme Court, only the Supreme Court decision, I don't know that the magistrate was even in a position, really, to judge whether or not there were, you know, the Supreme Court's decision was subject to a presumption of correctness. Well, let's assume for just a second here that I agree with you, that it's probably a much better practice to go look at the record. Okay? Let's assume that that's right. And that's certainly what I try to do. But putting that aside, I think my question, and then Judge Thomas' question was, even assuming they didn't do that, that you're right, I'm not sure that you are, but even assuming that you are, where was the mistake? What did they rely on? Where was the factual error, as Judge Thomas put it? What did they rely on that caused the problem? So, you know, you're kind of talking about harmless errors, what Judge Thomas suggested. Right. Remember, and I don't want to get too caught, I mean, because there's, I think, really, the more important issue is the issue that was fully exhausted, that I think was, at least, it was mentioned, it was argued in the context of his petition and his objections to the jury contamination issue. Okay. And that was fully exhausted. And by dismissing his petition, Mr. White has lost, really, all chance of obtaining federal review. So we can just review that and determine whether that was an error. We know what that is. We could. And that's why I think, you know, I started out my argument, I think, conceding, I think, as I must, that, you know, this was a pro se petition. It was poorly drafted. He included claims in there that probably are not cognizable under federal habeas. There may have been one or two that could have been developed. He wasn't given a chance to do that. It might very well be too late for him to go back and to exhaust those claims and statements. Vanessa, I want to be sure I understand this. You seem to be jumping around on this. I thought the one claim that you were, certified claim, the exclusion of evidence, was what you were relying upon. Are you now saying that the only chance that your client had was the contamination of jury claim? Is that correct? He can, I think, if this case were sent back, and if he was, I would hope if it was sent back he was appointed counsel, what we could do is file an amended petition. We could ask the court to stay and obey. We could go back, see if the court, see if in state court we can exhaust. But you're still asking us to reverse, so we can get the chance in the first place to stay and obey and so on, based upon the exclusion of evidence count. Is that correct? Are you drifting over into the non-certified issues, or are you back to where we're just looking at the exclusion of evidence? We have to have something to review here, and the only one that I'm aware of that's certified is the exclusion of evidence issue. Well, the certified issue is, did the district court properly dismiss the petition without reviewing the state court record and without requiring a response? And I would say that the district court did err in that regard. But the only issue that you say you raise, in other words the culpable claim that you raise in the context of the certified issue, is the self-defense theory, exclusion of evidence. I raised that self-defense theory, and I also talked about in my brief the fact that he lost, ended up by the district court using this procedure, not giving him the benefit of the doubt as a pro se petitioner, the ability to amend his petition or to require the state to file a response or reviewing the record or something, just summarily dismissing his petition. That was error, and it resulted in prejudice to him by a, he may have lost his chances to go back and exhaust, for instance, the exclusion of evidence claim, and there may not be anything this court can do about that. I acknowledge that. But he does have this other claim out there. Okay. Our questions have taken you a minute, or we'll give you some time for thought. Thank you. Please, the court. Mark Fowler, State of Montana, Attorney General's Office. Your Honor, to answer the questions being asked just recently by Judge Ezra, there's not been a jury contamination issue raised in the appellate brief. There's not been one raised, actually, in the petition at all. There is a brief mention in the objections to the findings of fact that Judge Otsopie found, but it's not been raised before, and it's not before this court. The only claim being Claim 1. It was the argument that it is colorable. It is a bit unusual for a case like this to get screened without asking for a response. I mean, that's a pretty low threshold. Well, Your Honor, it's. . . It may well be that it doesn't go anywhere, the claim, but to dismiss a suit without even asking the state to respond is a bit unusual in a habeas case, where at least there may be a colorable issue raised. It may not be successful, but it might be colorable. Unusual in the sense, Your Honor, I would agree that it's infrequent. As Your Honors would know, handling these cases, quite a few over the years. Yes, indeed. But not unprecedented, and certainly not outside the authority of the habeas statute, the habeas rule 4, which contemplates summary dismissal, obviously by its very wording, without ordering the state to respond or submit a trial transcript, where a claim is, by the wording of Rule 4, not apparent on its face or does not plainly appear. And as Your Honors have stated in Cassette v. Stewart, in the cases where there is a claim that is not exhausted, it must be perfectly clear that the petition does not raise a colorable claim. I think either perfectly clear or plainly appear. This Court, I don't think, has really reconciled that particular language. Although I did read a case in the district court, your colleague, I think Judge Kay, noted that there is some discrepancy, citing in that case, I cannot refer to you right now, stating that Rule 4 actually is one that is more persuasively on point than plainly appear. However, Your Honors would like to decide it. On either standard, there is not either a perfectly clear colorable claim on the face of the petition. Well, let me ask you this, because I'm trying to sort out the prejudice aspect of this case. What is the state's view, if any, of whether or not these claims would be procedurally defaulted in state court if asserted now? Absolutely procedurally defaulted. And why is that? Because the time is run on the Montana Post-Conviction Statute, statute of limitations. It ran August 21st of 2008, some seven months after Judge Siebel entered the order adopting it. And it's your position that the filing of a federal petition doesn't stay the running of the state, the time on the state petition, right? That's correct. It was a window of seven or eight months for which the petitioner could have brought the claims or new federal claim for federal claims in the first instance and exhausted those and then come back. But if Judge Siebel had issued a stay-in-abate order, those claims would have been timely filed, could have been timely filed. Yes, Your Honor, except that stay-in-abate obviously has its own requirements, one of which is good cause and also must meet the threshold.  I'm just trying to figure out the timing. We would have never gotten a stay-in-abate in the first instance because the principles of comedy do not contemplate sending frivolous claims to the state court. And I think that's established in the precedent in this court in the Lambert case, Lambert v. Blodgett, that the requirement of the courts, there would almost be abuse of discretion, I read, from that case to send unexhausted but frivolous claims to state court. Right. No, I agree with you on that. But the question is whether or not this is a frivolous claim or not. And this was a pretty high-profile case involving high-profile witnesses and a high-profile defendant, really. So, I mean, with that high profile of a case, it's a bit unusual to say, we're not even going to entertain a beyond-the-screening-state case. I'm not saying it's necessarily incorrect, unprecedented, or with that, I mean, obviously the district court had the power to do it, but it's a little unusual. Well, yes, Your Honor, again, though, but it is frivolous for, I think, three very strong factual reasons, the three reasons found in the Montana State Direct Appeal decision, particularly Paragraph 15, in analysis of the jury contamination issue, the state court made presumptively correct factual findings, which included the fact that the evidence against White was overwhelming, that he admitted or testified he was the aggressor, he was the initial aggressor. This is found in Paragraph 15. And the third fact... Just a second, let me get on where you are. Okay, go ahead. He knew the victim, Gary Temple, was unarmed. If you take those presumptively correct, never-challenged, indisputed facts, in looking at the federal petition here, it is clear that the claims are frivolous. Is that a fact? I mean, if true, but then doesn't that require the district court to look at the transcript of the case before determining that the facts, because part of habeas is to determine whether the Supreme Court actually got a fact wrong, which is, it wouldn't happen in the Montana Supreme Court, it would happen in other Supreme Courts. Your Honor, when the petitioner comes through the doors of habeas and makes claims, we believe, the state believes, that the state court factual findings are clothed in presumptive correctness coming through the door. But, I mean, this is screening. Right. Doesn't Mr. White himself, though, have an obligation to have indicated in his pleading what evidence he would have put on had he been permitted to do so? Correctly, both in the petition and in the appeal. He didn't do that, did he? Right. Your Honor, there's nothing that's been mentioned that brings into question any of the factual findings. I mean, the only, I mean, the evidence, as I understand it, maybe you can correct me, that he wanted to put on was other evidence of past instances of disagreement or threats made by the victim, right? I believe so. It's uncertain. It's fake. I don't know whether actually that there is something outside the established record from the state court. It's not clear, at least the state. You look at the objections to Matthew Osby's findings, it's some indication that he's talking about Diana Temple or Daniel Kotke, but those were people who testified. Can the trial court do the Tinsley balancing without receiving any pleadings from the state and analyze strictly what Mr. White has presented, including any exculpatory evidence that he says he would have put on? If you're referring to, Your Honor, I think my memory escapes me, Tinsley v. Borg? Correct. And whether or not there are ---- It's a five-part balancing test about whether exclusion of evidence rises to a constitutional violation. Well, if I understand your position correctly, I think if you're asking that the state's position ---- Well, let me try to clarify. The issue we deal with, of course, is the district court decided not to ask for the government to respond. It had very limited material before it. I'm trying to explore in terms of whether what was done was adequate from a constitutional perspective, whether there was enough information before the district court to permit a Tinsley balancing on the very issue that is before us now such that it wasn't necessary that anything further come before the court, before a decision could be made. I'm hesitant to fully give you an accurate answer because I've not re-familiarized myself with a Tinsley v. Borg analysis. It did not come up in the opening brief. I would say that when a petitioner comes forward with disputes that are conclusory, that merely take the given record, in this case the record only on the state court-directed appeal decision with its finding of facts, and seek simply to cast new interpretation, then this is not necessary for the habeas court, upon reviewing the petition, to go any further. These are presumptively correct findings of fact. The petitioner is not saying that the decision-making processes employed by the state court was incorrect or somehow flawed. No, but I don't think I've ever heard the argument that the presumption extends so strongly that a claim can't survive screening. I mean, when we analyze the case on the merits, we presume that the state court findings are correct, but I've never, I don't think I've seen a case, I may be wrong, where the state prevailed at the level saying we just presume the findings are correct and that's the end of the suit at screening. And there may not be exact authority on point. He can't be with the court. Yeah, I mean, you're in a difficult spot because you say you didn't appear, you weren't asked to appear. Well, I think that, but to answer your question and your concern about being unusual, there's nothing in the petition, stated by the petitioner, that would cast into question what the habeas statute does clearly and indisputably provide that the factual findings are correct. They come correct. Until and when they are challenged, there's no reason to doubt them. And there's no basis now, there's never been any basis. Well, I suppose, but I read the brief filed by State Defense Counsel of the Supreme Court, Montana. It was four pages long. Right. That was it. So normally if you've got a case of life in prison where you have some real issues and that may have a case of ineffective assistance of counsel that's now precluded that he could have raised. My time is up. Yes, sure. This is an unusual case because the facts are so unusual in the sense that the evidence is so overwhelming. It's just simply there's not any facts that lend itself to any claims. So your point is he could have filed an Anders brief? Possibly, yes. Which would have been one page. Well, the juror misconduct issue is a legally viable issue, I think. Which one, sir? The juror misconduct or the extraneous information. We reversed on a lot of cases a juror misconduct. I'm labeling it juror misconduct. Extraneous information case. We've considered on the merits cases that are pretty close to this one factually. I mean, the James case went to en banc review on some of these close factual issues on self-defense. So I'm not saying you're right or wrong on the merits. I'm just saying it's unusual for screening, and that's what we've got to decide at this juncture. Any further questions? Go ahead. You wanted to say something. No, Your Honor, except for me to add and emphasize that the juror contamination claim was not brought face up. No, I understand. Thank you very much. We'll give you a minute for rebuttal. I think actually Judge Thomas, your last comments hit the nail on the head. Where we were at here was just simply the initial screening. And the district court record is very sparse. I will say on the other side, when I read Judge Osby's opinion, it's hard for me to find fault with it. And that's the hard part of this case, is that usually my initial reaction is that this isn't a screening case, but I read her opinion and I thought, well, I think she may have it right. So tell me why she got it wrong. Well, even in civil cases, for example, someone may file a complaint that doesn't necessarily state a claim. They're normally given an opportunity to try to amend it so that they can state a claim. Here there was, although they weren't set forth specifically as claims, I mean there were mentions throughout the petition about this jury contamination issue. And when it went up on objections, there was, you know, he specifically raised the jury contamination issue. So the question I think then becomes, is his petition patently frivolous? There's no way he's going to win. Because under Rule 4 under Supreme Court jurisprudence, it's a really pretty high bar just to dismiss right at that initial screening time. And we're up here really without much of a record. You're just complaining. You're basically complaining about the process. But the process is important. I didn't say it wasn't important. I said you're complaining about the process. I think it needs, yes, and I would say it needs to go back for greater process to let this thing sort out. Because the way it worked out, it was dismissed too quickly. I don't think it was patently obvious from the face of the pleadings that there's no way he could have survived. But at the end of the day, when you look at each and every claim that's made, including those that have not been certified, can you really say that there are any of these that has even the remotest colorability or chance of success? On the claims? On the certified or uncertified claims, which of those claims, if any, has a colorable chance of success under current law? Certainly. I think that the jury contamination issue does. Okay. So that's the bete noire of the piece from your perspective, is jury contamination. That and assuming they get past the procedural hurdles, I think. I can say, can you get past that? I think Judge Thomas asked you about the state timeliness. Wouldn't that claim be barred even if we sent that back? It's barred, isn't it, under Montana law? I think it probably would, but I don't know for sure. So what do we achieve if we were to respond affirmatively to your prayer in this case that we send it back? If it's barred under Montana law, nothing's achieved, right? Perhaps not on those claims, but he does have his claim that's fully exhausted. It was raised constitutionally, and that is the jury contamination issue. Do we have a case in Montana, and I just don't know this, about whether or not state habeas claims are told or in the tendency of a federal habeas proceeding? I mean, normally it goes the other direction, obviously. Right. Right. I'm not familiar. I haven't, to be honest with you, I haven't completely 100 percent researched that. Okay. Any further questions? Okay. Thank you very much. The case will certainly be submitted for decision. Thank you both for your arguments for coming out today.
judges: Ezra, Thomas, Smith M.